## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19-_____ |
| v. | : | DATE FILED: _____ |
| JASON GERNER | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 (conspiracy to commit health care fraud – 1 count) |
| | : | 18 U.S.C. § 1956(h) (conspiracy to launder monetary instruments – 1 count) |
| | : | Notices of forfeiture |

## <u>I N F O R M A T I O N</u>

### <u>COUNT ONE</u>

### (Conspiracy to Commit Health Care Fraud)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1.        Liberation Way was an entity which purported to provide treatment for individuals suffering from drug and alcohol addiction.  Defendant JASON GERNER and Person #2 (now deceased) and Person #3 founded Liberation Way in early 2015.  Liberation Way had treatment centers in Yardley, opened in July 2015, Bala Cynwyd, opened in June 2016, and Fort Washington, opened in August 2016, all in the Eastern District of Pennsylvania.  Liberation Way facilities provided only out-patient services, and none of the facilities were licensed to do maintenance or in-patient treatment.

2.        Independence Blue Cross, AmeriHealth, Highmark Blue Shield

1

("Highmark"),  CIGNA, and FEHBP Blue Cross plans were private insurance companies and

health care benefit programs (collectively, "the Health Care Benefit Programs") as defined in 18

U.S.C. § 24(b), that is, they were private plans and contracts, affecting commerce, under which

medical benefits, items, and services were provided to eligible individuals.  Independence Blue

Cross also managed plans for patients who were participants in employee health plans covered

by the Employee Retirement Income Security Act (ERISA).

        3.     Liberation Way was in "out-of-network" status with Independence Blue

Cross, AmeriHealth, Highmark, CIGNA, and FEHBP Blue Cross plans, that is, Liberation Way

was a health care provider not participating under insurance plans for insureds who utilized

Liberation Way services, and, as such, the Health Care Benefit Programs paid significantly

higher fees for their insureds who utilized Liberation Way services and testing by laboratories to

which Liberation Way sent blood and urine samples of the patients.

        4.     Independence Blue Cross serviced customers in a five-county area in

Pennsylvania, and AmeriHealth was an Independence Blue Cross subsidiary that serviced

customers in New Jersey (both collectively referred to as "IBC").  IBC did not accept third party

payments for a customer's insurance premiums unless from a family member or if made by a

bona fide religious institution or other bona fide not-for-profit organization, and only from such a

bona fide institution or organization which met the following criteria:

> a) the assistance [was] provided on the basis of the insured's financial
> need;
> b) the institution or organization [was] not a health care provider or
> supplier;
> c) the premium payments and any Cost-Sharing Program cover an entire
> policy year; and

                    d) the institution or organization [did] not have any direct or indirect
                    financial interest.

IBC clearly posted this Third Party Payment Policy on its website and required applicants to

acknowledge that they accepted IBC's Conditions of Enrollment when applying, along with this

advisory: "Any person who knowingly and with intent to defraud any insurance company or

other person files an application for insurance or statement of claim containing any material false

information or conceals, for the purpose of misleading, information concerning any fact material

thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal

and civil penalty."

        5.     Medical providers providing care and treatment to patients at Liberation

Way facilities were required to certify that (1) the services provided were medically necessary,

(2) the services were personally provided by the person signing the form, or by one of his/her

employees acting under the signer's direction, and (3) the information contained in the form was

true, accurate, and complete.  The provider's National Provider Identification ("NPI") number

was included as a part of each submission.

        6.     Domenick Braccia, charged elsewhere, was a medical doctor who

purported to be the "medical director" in charge of the treatment of all patients at the various

Liberation Way facilities.  Braccia, as a certified medical care provider, was assigned a unique

NPI.   Braccia was permitted to use his NPI number to bill, and participate in the billing of,

health care benefit programs for legitimate medical services that he rendered to and ordered for

patients.

        7.     Ramesh Sarvaiya, charged elsewhere, was a medical doctor with a unique

NPI number assigned to him as a certified medical care provider.   Sarvaiya was permitted to use his NPI number to bill, and participate in the billing of, health care benefit programs for legitimate medical services that he rendered to and ordered for patients.

8.      A-Lab, C-Lab, DB-Lab, O-Lab, and AD-Lab were laboratories in the state of Florida that provided urine sample testing and billed insurance companies for their services. C-Lab, DB-Lab, and O-Lab all operated out of the same Florida address.  Testing can be either "presumptive" or "definitive."  Presumptive testing determined the drug that was in the patient's system.  Definitive, also known as qualitative, testing determined the exact drug, and how much of it was in the sample.

9.      Jesse Peters, charged elsewhere, was employed with or a partner in A-Lab C-Lab, DB-Lab, O-Lab, and AD-Lab.  The existence of A-Lab, C-Lab, O-Lab and AD-Lab pre-dated defendant JASON GERNER's conspiracy with Peters and others known to the United States Attorney, while DB-Lab was created as part of defendant GERNER's fraudulent scheme with co-conspirators, Peters and Person #2.

10.      Based on the fraudulent claims that defendant JASON GERNER conspired to submit, and cause to be submitted to the Health Care Benefit Programs, the Health Care Benefit Programs made payments to Liberation Way and its associated entities, laboratories, and insured individuals.  The fraudulent claims were for purported medical services for patients for whom Liberation Way personnel fraudulently obtained premium insurance policies from IBC and also for medical services that Domenick Braccia and Ramesh Sarvaiya did not actually provide.

**The Conspiracy**

11.     From in or about early 2015 through in or about December 2017, in the

Eastern District of Pennsylvania and elsewhere, defendant

**JASON GERNER**

conspired and agreed, with others known and unknown to the United States Attorney, to

knowingly and willfully execute a scheme to defraud health care benefit programs, and to obtain

money and property of health care benefit programs by means of false and fraudulent pretenses,

representations, and promises, in connection with the delivery of and payment for health care

benefits, items and services, by causing to be submitted fraudulent health care insurance claims,

in violation of Title 18, United States Code, Section 1347.

**Manner and Means**

It was part of the conspiracy that:

12.     Defendant JASON GERNER, Person #2 and Person #3 founded and

designed Liberation Way to operate in an "out-of-network" status for private insurers, thereby

amassing large amounts of money in a short amount of time.   It was further part of the scheme

to target and recruit patients who either had policies with the Health Care Benefit Programs, or

for whom a premium policy for health care benefits could be fraudulently obtained from IBC, in

order to maximize patient intake, maximize patient billing, and maximize monetary profit

through over-testing and over-billing, all designed to defraud the Health Care Benefit Programs.

13.     Defendant JASON GERNER, along with Person #2, Person #3, and

Domenick Braccia were investors in Liberation Way, and as significant equity partners, stood to

gain financially from increased business and billing at Liberation Way.

14.    In establishing Liberation Way, defendant JASON GERNER and Person #2 and Person #3 accepted only premium insurance policies, and did not accept any patients who had insurance through Medicare, Medicaid, or managed through Health Maintenance Organizations.  When a patient did not have appropriate premium insurance, defendant GERNER, Person #2, Person #3, and others known to the United States Attorney sometimes paid for a premium insurance policy with IBC for the patient, in violation of the Conditions of Enrollment with IBC and in violation of IBC's Third Party Payment Policy, in order that the patient be able to attend treatment at Liberation Way and in order that Liberation Way be able to bill IBC for services.  The resulting payments made by IBC vastly outweighed the cost of the monthly insurance premiums.  Defendant GERNER, Person #2, Person #3, Person #8, and others known to the United States Attorney paid the monthly premiums to IBC directly, reimbursed a patient's family member who in turn paid IBC, and paid for debit cards to be used when applying for and paying the premiums.

15.    Defendant JASON GERNER initially paid for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, using an account he had previously established, named Hope for Families.  Hope for Families was not a bona fide religious institution nor a bona fide not-for-profit organization.

16.    Defendant JASON GERNER and Person #2, Person #3, Person #7, and others known to the United States Attorney, thereafter created a separate fund named "Leaf

Healthcare" solely for the purpose of paying for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy. The Leaf Healthcare fund was ostensibly separate from Liberation Way, but in fact was funded by Person #2, Person #3, and others known to the United States Attorney, sometimes with Liberation Way funds. Defendant GERNER and Person #2, Person #3, and Person #7 hired Person #8 to run Leaf Healthcare. Person #2 and Person #3 disguised their connection to the funding of Leaf Healthcare by writing checks to Person #8 and others, and instructing them to cash the checks, with the proceeds to be deposited into the Leaf Healthcare account. Defendant GERNER, Person #2, Person #3, and others known to the United States Attorney used the Leaf Healthcare fund only to pay for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy.

17.     Defendant JASON GERNER, and Person #2, Person #3, and other persons known to the United States Attorney rented, and sometimes purchased, locations to use as "sober homes" in order to house their Liberation Way patients, and provided housing to many of their patients, frequently at no cost to the patient. Although ostensibly separate entities, these "sober home" locations were funded solely by Liberation Way funds, and only patients attending Liberation Way treatment locations were permitted to live in these "sober homes," all in order to ensure that the patients attended treatment, which, consequently, allowed Liberation Way to bill for services. Also, as an out-of-network provider, Liberation Way needed to control their patient population in order to obtain insurance checks sometimes mailed directly to the patient. All

patients funded by Leaf Healthcare were required to reside at one of the "sober homes."

18.     Domenick Braccia was the sole medical doctor on staff at all three Liberation Way facilities and purported to be the overseeing doctor for all medical care. However, Braccia never saw or provided medical care to any patients at the Bala Cynwyd Liberation Way facility who were ostensibly under Braccia's medical care and treatment, and for whom the Health Care Benefit Programs were billed by Liberation Way for Braccia's purported medical care and treatment.   Braccia did not see or provide care to all patients at the Yardley and Fort Washington Liberation Way facilities who were ostensibly under his medical care and treatment, and for whom the Health Care Benefit Programs were billed by Liberation Way for his purported medical care and treatment.

19.     Defendant JASON GERNER solicited Ramesh Sarvaiya to be the doctor to sign, and otherwise authorize, urine test requests and to certify that the tests were medically necessary for Liberation Way patients, although defendant GERNER never intended that Sarvaiya see any Liberation Way patient, participate in any way in the treatment of any patient, or go to any Liberation Way facility.

20.     Contrary to medical standards, Ramesh Sarvaiya pre-signed blank forms for urine testing to use with Liberation Way patients.   Contrary to medical standards, Domenick Braccia also pre-signed blank forms and orders for urine and other testing and for prescriptions to use with Liberation Way patients, and relegated the responsibility of medical care and decisions about appropriate medical testing, to other persons at the various Liberation Way facilities who were not medical doctors and therefore not qualified to make those decisions.

8

Defendant JASON GERNER instructed staff at the Liberation Way facilities to use these blank forms pre-signed by Braccia and Sarvaiya when ordering tests on the patients at Liberation Way.

21.    Defendant JASON GERNER agreed with Jesse Peters, Person #2, Domenick Braccia, and Ramesh Sarvaiya, that Liberation Way would ship the urine samples from the patients who attended Liberation Way locations in the Eastern District of Pennsylvania to Peters' laboratories in Florida for testing.  They further agreed that, contrary to medical standards, the urine samples would be tested for a large, and correspondingly expensive, array of laboratory tests, and that, no matter the specific purported addiction of the individual patient, all urines would be tested for the same large array of drugs, without regard to the individualized needs of the Liberation Way patients.

22.    Pursuant to orders for urine testing ostensibly ordered by Domenick Braccia and Ramesh Sarvaiya, the laboratories associated with Jesse Peters tested each urine sample of Liberation Way patients for a large array of qualitative tests and billed the Health Care Benefit Programs for these tests.   The urine test results were forwarded back to Liberation Way staff for inclusion in the medical files of patients ostensibly under the care of Dr. Braccia.

23.    Defendant JASON GERNER instructed staff at Liberation Way facilities to obtain frequent urine samples from Liberation Way patients, regardless of medical need, in order to maximize billing at the laboratories associated with Jesse Peters, so much so that the Florida laboratories were sometimes testing a subsequent urine sample for the same patient even before the results from a prior urine sample were completed and results communicated back to Liberation Way, before any test results from a prior urine sample could be forwarded to

Domenick Braccia for integration into any purported rehabilitation treatment plan, and much more frequently than was necessary to treat any addiction.   Defendant GERNER also sometimes instructed staff at Liberation Way to sign the patients' signatures on the urine testing forms.

24.     Defendant JASON GERNER agreed with Person #2 and Jesse Peters that Peters would kick back to defendant GERNER and Person #2 a percentage, that is, approximately 40%, of the money that the insurance companies paid the laboratories associated with Peters for conducting tests on the urine samples sent by Liberation Way.

25.     Jesse Peters disguised the payments to defendant JASON GERNER and Person #2 as "commission" payments made to apparently independent LLC companies, including Alban LLC, a company associated with defendant GERNER, "H— W-----s," a company associated with Person #2, and Philly 180, which purported to be a "consulting company," but which defendant GERNER knew was a shell company established by Person #4, a relative of Person #2, to be a part of this scheme, in order to conceal and disguise the nature, source, location, ownership, and control of the proceeds of the health care fraud conspiracy.  None of these LLC companies provided any consulting work to Peters or his laboratories or to any Liberation Way entity.

26.     Defendant JASON GERNER, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to IBC for patients at Liberation Way for whom defendant JASON GERNER, and others known and unknown to the United States Attorney, had fraudulently acquired an IBC insurance policy in violation of IBC's Conditions of Enrollment and Third Party Payment Policy.

10

27.     Defendant JASON GERNER, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to the Heath Care Benefit Programs for urine tests and other tests without a medical doctor, including either Domenick Braccia or Ramesh Sarvaiya, actually individually determining the medical need for the urine tests, but falsely asserting that the tests were all medically necessary.

28.     Defendant JASON GERNER, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to the Health Care Benefits Programs for medical services that were not provided by Domenick Braccia.

29.     As a result of this fraudulent scheme, defendant JASON GERNER conspired to submit and caused to be submitted fraudulent claims to the Health Care Benefit Programs of approximately $16,809,640 and caused the Health Care Benefit Programs to incur losses of approximately $9,338,607.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant

### JASON GERNER,

and others known and unknown to the United States Attorney committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     In or about early 2015, defendant JASON GERNER and Person #2 and Person #3 agreed that they would found Liberation Way, an entity which was intended to provide treatment for individuals dealing with drug and alcohol addiction, in the Eastern District of Pennsylvania.

2.      In or about the Spring of 2015, defendant JASON GERNER and Person #3 approached Domenick Braccia and solicited him to be both an investor in Liberation Way and the staff doctor for Liberation Way patients.

3.      In or about the Summer of 2015, defendant JASON GERNER, Person #2, Person #3, and Domenick Braccia provided money for the start-up Liberation Way, each becoming a significant equity owner in Liberation Way.

4.      In or about July of 2015, defendant JASON GERNER and Person #2 and Person #3 opened a Liberation Way treatment center in Yardley, Pennsylvania.

5.      In or about June of 2016, defendant JASON GERNER and Person #2 and Person #3 opened a Liberation Way treatment center in Bala Cynwyd, Pennsylvania.

6.      In or about August of 2016, defendant JASON GERNER and Person #2 and Person #3 opened a Liberation Way treatment center in Fort Washington, Pennsylvania.

### Paying for Patients' Insurance to Increase Enrollment and Payments from Health Care Benefit Programs

7-31.   From on or about August 11, 2015, through in or about February 2016, and on or about the dates noted below, defendant JASON GERNER paid for insurance policies with IBC, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, so the below-noted patients, identified by initials, would attend Liberation Way for treatment, and defendant GERNER could have Liberation Way and Florida laboratories submit claims for purported treatment for each patient, resulting in over $5.2 million billed to IBC, and IBC paying approximately $1,225,305, as a result of the fraudulently purchased policies.  Defendant GERNER, and someone at his direction, made the first payment for each policy using a VISA

12

card ending in #3884 associated with defendant GERNER's Hope for Families account:

| Overt Act# | Patient Initials | Application Date / First Payment | Effective Date of IBC Policy | Date canceled for Non-Payment | First Claim by Liberation Way | Last Claim by Liberation Way |
|---|---|---|---|---|---|---|
| 7 | M.C. | 08-11-2015 | 09-01-2015 | 10-01-2015 | 09-18-2015 | 10-12-2015 |
| 8 | S.M. | 08-11-2015 | 09-01-2015 | 11-01-2015 | 09-01-2015 | 02-16-2016 |
| 9 | D.A. | 08-27-2015 | 09-01-2015 | 10-01-2015 | 09-16-2015 | 09-22-2015 |
| 10 | D.M. | 09-28-2015 | 10-01-2015 | 11-01-2015 | 10-13-2015 | 12-24-2015 |
| 11 | A.G. | 10-14-2015 | 10-15-2015 | 05-01-2016 | 11-02-2015 | 03-08-2016 |
| 12 | J.R. | 10-14-2015 | 10-15-2015 | 11-01-2015 | 10-20-2015 | 11-10-2015 |
| 13 | J.F. | 10-15-2015 | 10-15-2015 | 12-01-2015 | 10-28-2015 | 01-04-2016 |
| 14 | S.H. | 10-26-2015 | 11-01-2015 | 12-01-2015 | 11-11-2015 | 01-20-2016 |
| 15 | D.W. | 11-13-2015 | 11-15-2015 | 02-01-2016 | 01-03-2016 | 06-23-2016 |
| 16 | S.W. | 11-13-2015 | 11-15-2015 | 12-01-2015 | 11-30-2015 | 01-04-2016 |
| 17 | S.M. | 11-30-2015 | 12-01-2015 | 03-01-2016 | 12-07-2015 | 03-02-2016 |
| 18 | T.S. | 11-30-2015 | 12-01-2015 | 04-01-2016 | 12-22-2015 | 06-20-2016 |
| 19 | S.H. | 12-14-2015 | 12-15-2015 | 11-01-2016 | 01-04-2016 | 03-23-2016 |
| 20 | J.J. | 12-14-2015 | 12-15-2015 | 04-01-2016 | 12-31-2015 | 09-26-2016 |
| 21 | A.R. | 12-15-2015 | 12-15-2015 | 04-01-2016 | 12-15-2015 | 02-08-2016 |
| 22 | A.P. | 12-30-2015 | 01-01-2016 | 04-01-2016 | 01-01-2015 | 03-10-2016 |
| 23 | M.D. | 12-31-2015 | 01-01-2016 | 03-01-2016 | 01-14-2016 | 03-17-2016 |
| 24 | V.T. | 12-31-2015 | 01-01-2016 | 02-01-2016 | 01-05-2016 | 01-14-2016 |
| 25 | A.L. | 01-28-2016 | 02-01-2016 | 02-01-2016 | 02-03-2016 | 04-12-2016 |
| 26 | M.L. | 01-29-2016 | 02-01-2016 | 05-01-2016 | 02-10-2016 | 04-14-2016 |
| 27 | K.S. | 01-29-2016 | 02-01-2016 | 03-01-2016 | 02-18-2016 | 02-19-2016 |
| 28 | T.S. | 01-31-2016 | 02-01-2016 | 03-01-2016 | 02-04-2016 | 05-12-2016 |
| 29 | E.B. | 02-12-2016 | 02-15-2016 | 03-01-2016 | 02-16-2016 | 04-04-2016 |
| 30 | A.N. | 02-12-2016 | 02-15-2016 | 03-01-2016 | 02-24-2016 | 03-14-2016 |
| 31 | A.R. | 02-12-2016 | 02-15-2016 | 05-01-2016 | 02-15-2016 | 08-02-2016 |

32.     In or about December 2015, defendant JASON GERNER and Person #2, Person #3, and Person #7, all known to the United States Attorney, discussed creating a fund separate from Hope for Families that they would fund, in order to more systematically pay for IBC insurance policies for patients without insurance in order that the patients would attend Liberation Way rehabilitation facilities.

In or about January 2016:

33.     Defendant JASON GERNER and Person #2, Person #3, and Person #7, all known to the United States Attorney, agreed to create a fund to pay for IBC insurance policies for patients without insurance so that the patients would attend Liberation Way rehabilitation facilities.  To conceal their relationship to this fund, defendant GERNER, Person #2, Person #3, and Person #7, agreed to hire Person #8, known to the United States Attorney, not presently connected to Liberation Way to run the fund.

34.     Defendant  JASON GERNER and Person #2, Person #3, and Person #7 interviewed Person #8 and hired him for the position of "Director" of Leaf Healthcare. Defendant GERNER, Person #2, and Person #3 instructed Person #8 to open a bank account in the name of "Leaf Healthcare," to deposit the checks provided to him into the Leaf Healthcare account, to pay himself a weekly salary from the Leaf Healthcare account, and to use the Leaf Healthcare funds to purchase IBC policies for patients who would attend Liberation Way rehabilitation facilities.  Person #8 was instructed to refer to Leaf Healthcare's payment of IBC policies as "scholarships," and to offer these "scholarships" to any patient referred to Person #8 by Liberation Way marketing staff where the prospective Liberation Way patient had no insurance.

On or about January 21, 2016:

35.     Person #3 wrote a check for $10,000 on Person #3's personal account, made out in Person #8's name, on which Person #3 falsely noted that the $10,000 was a "personal loan," and Person #2 and Person #3 instructed Person #8 to cash the check in his own

account and then deposit the proceeds of the check into the Leaf Healthcare account.

36.     Person #2 wrote a check for $10,000 on Person #2's personal account, made out in Person #8's name, on which Person #2 falsely noted that the $10,000 was a "business loan," and Person #2 and Person #3 instructed Person #8 to cash the check in his own account and then deposit the proceeds of the check into the Leaf Healthcare account.

37.     On or about January 29, 2016, Person #8 withdrew $20,000 from his personal account into which he had deposited the two $10,000 checks that had been given him by Person #3 and Person #2 to fund Leaf Healthcare, and opened an account in the name of Leaf Healthcare, into which Person #8 deposited $20,000 cash.

38.     In or about February 2016, using the Leaf Healthcare bank account, funded by Liberation Way principals, Person #2 and Person #3, Person #8 began paying for IBC insurance policies for patients referred to him by Liberation Way marketing staff.

39.     On or about March 21, 2016, Person #2 wrote a check for $12,500 on Person #2's personal account, made out in Person #8's name, on which Person #2 falsely noted that the $12,500 was a "business loan," and Person #2 and Person #3 instructed Person #8 to cash the check and then deposit the proceeds of the check into the Leaf Healthcare account.

On or about March 22, 2016:

40.     Person #3 wrote a check for $12,500 on Person #3's personal account, made out in Person #8's name, on which Person #3 falsely noted that the $12,500 was a "personal loan," and Person #2 and Person #3 instructed Person #8 to cash the check and then deposit the proceeds of the check into the Leaf Healthcare account.

41.     Person #8 deposited the proceeds of these two checks given him by Person #2 and Person #3, totaling $25,000, into the Leaf Healthcare account.

On or about April 21, 2016:

42.     Person #3 wrote a check for $13,200 on the Liberation Way LLC business account, made out in Person #7's name, on which Person #3 falsely noted that the $13,200 was for "April Consulting," and Person #3 instructed Person #7 to deposit the check into Person #7's personal account and then write a personal check to Leaf Healthcare.

43.     Per Person #3's instructions, Person #7 deposited the Liberation Way LLC check for $13,200 signed by Person #3 into Person #7's personal bank account, and Person #7 wrote a check for $13,200 payable to Leaf Healthcare.

44-72.   From in or about February 2016 through in or about August 2016, and on or about the dates noted below, defendant JASON GERNER, Person #2 and Person #3 paid for, or caused to be paid for, insurance policies with IBC, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, so the below-noted patients, identified by initials, would attend Liberation Way for treatment, and defendant GERNER, Person #2, and Person #3 could have Liberation Way and Florida laboratories submit claims for purported treatment for each patient, resulting in over $8.3 million billed to IBC, and IBC paying approximately $2,536,529, for these patients as a result of the fraudulently purchased policies.  Person #8 made the first payment for each policy using the Leaf Healthcare account ending in #1976:

| Overt Act# | Patient Initials | Application Date / First Payment | Effective Date of IBC Policy | Date canceled for Non-Payment | First Claim by Liberation Way | Last Claim by Liberation Way |
|---|---|---|---|---|---|---|
| 44 | W.C. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 03-21-2016 | 04-05-2016 |

| 45 | J.D. | 02-29-2016 | 03-01-2016 | 05-01-2016 | 03-11-2016 | 04-06-2016 |
|----|------|------------|------------|------------|------------|------------|
| 46 | S.H. | 02-29-2016 | 03-01-2016 | 07-01-2016 | 03-11-2016 | 08-22-2016 |
| 47 | C.H. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 02-16-2016 | 06-30-2016 |
| 48 | R.L. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 04-11-2016 | 05-05-2016 |
| 49 | P.S. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 03-22-2016 | 04-13-2016 |
| 50 | M.W. | 02-29-2016 | 03-01-2016 | 07-01-2016 | 03-15-2016 | 08-04-2016 |
| 51 | L.A. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-16-2016 | 06-06-2016 |
| 52 | J.B. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-23-2016 | 05-05-2016 |
| 53 | J.H. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-28-2016 | 03-28-2016 |
| 54 | T.L. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-29-2016 | 06-07-2016 |
| 55 | M.M. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-20-2016 | 07-29-2016 |
| 56 | J.R. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-28-2016 | 05-13-2016 |
| 57 | J.R. | 03-14-2016 | 03-15-2016 | 06-01-2016 | 03-28-2016 | 10-05-2016 |
| 58 | A.W. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-28-2016 | 08-22-2016 |
| 59 | K.D. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-01-2016 | 04-14-2016 |
| 60 | R.F. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-14-2016 | 05-13-2016 |
| 61 | O.M. | 03-31-2016 | 04-01-2016 | 07-01-2016 | 04-11-2016 | 07-26-2016 |
| 62 | S.P. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-14-2016 | 07-13-2016 |
| 63 | K.P. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-11-2016 | 06-16-2016 |
| 64 | V.S. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-13-2016 | 06-23-2016 |
| 65 | D.S. | 04-14-2016 | 04-15-2016 | 08-01-2016 | 04-26-2016 | 09-30-2016 |
| 66 | J.P. | 04-30-2016 | 05-01-2016 | 06-01-2016 | 05-25-2016 | 05-31-2016 |
| 67 | J.S. | 04-30-2016 | 05-01-2016 | 05-01-2016 | 05-02-2016 | 10-04-2016 |
| 68 | L.S. | 04-30-2016 | 05-01-2016 | 09-01-2016 | 05-04-2016 | 08-31-2016 |
| 69 | A.O. | 05-31-2016 | 06-01-2016 | 09-01-2016 | 06-01-2016 | 02-17-2017 |
| 70 | K.S. | 05-31-2016 | 06-01-2016 | 11-01-2016 | 06-01-2016 | 11-30-2016 |
| 71 | K.B. | 06-30-2016 | 07-01-2016 | 09-01-2016 | 07-15-2016 | 10-18-2016 |
| 72 | E.C. | 07-29-2016 (O-E)[1] | 08-01-2016 | 11-01-2016 | 07-20-2016 | 11-09-2016 |

73.     In or about April 2016, after an insurance broker warned Person #8 to be "careful" about the Leaf Healthcare account paying for all the IBC policies, defendant JASON GERNER, Person #2, and Person #3, instructed Person #8 to use other means to pay for the "scholarship" IBC policies, including using money orders to repay a relative of the patient who paid for the patient's IBC policy on their own credit card, and purchasing debit gift cards to be

---

[1]     Policy applied for via the Marketplace exchange; "O-E" refers to "On Exchange."

used to pay for patients' IBC policies.

74-85.  From in or about April 2016 to in or about August 2016, and on or about

the dates noted below, defendant JASON GERNER, Person #2, and Person #3 paid for, or

caused to be paid for, insurance policies with IBC, in violation of IBC's Conditions of

Enrollment and Third Party Payment Policy, so the below-noted patients, identified by initials,

would attend Liberation Way for treatment, and defendant GERNER, Person #2, and Person #3

could have Liberation Way and Florida laboratories submit claims for purported treatment for

each patient, resulting in over $2.9 million being billed to IBC, and IBC paying approximately

$533,658, for these patients as a result of the fraudulently purchased policies.  Person #8 made

the first payment for each policy using money from the Leaf Healthcare account to purchase

money orders and debit cards, which in turn were used to pay for these policies:

| Overt Act# | Patient Initials | Application Date / First Payment | Effective Date of IBC Policy | Date canceled for Non-Payment | First Claim by Liberation Way | Last Claim by Liberation Way |
|---|---|---|---|---|---|---|
| 74 | J.B. | 04-30-2016 | 05-01-2016 | 08-01-2016 | 08-29-2016 | 09-26-2016 |
| 75 | F.B. | 05-31-2016 | 06-01-2016 | 07-01-2016 | 06-14-2016 | 07-30-2016 |
| 76 | A.M. | 05-31-2016 | 06-01-2016 | 02-01-2017 | 06-13-2016 | 05-20-2017 |
| 77 | D.M. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 01-28-2016 | 06-13-2016 |
| 78 | C.V. | 05-31-2016 | 06-01-2016 | 08-01-2016 | 06-14-2016 | 06-20-2016 |
| 79 | V.M. | 06-30-2016 | 07-01-2016 | 11-01-2016 | 07-18-2016 | 09-30-2016 |
| 80 | M.B. | 07-31-2016 | 08-01-2016 | 10-01-2016 | 08-12-2016 | 10-27-2016 |
| 81 | G.F. | 06-30-2016 (O-E) | 07-01-2016 | 10-01-2016 | 07-25-2016 | 09-30-2016 |
| 82 | K.J. | 06-30-2016 (O-E) | 07-01-2016 | 11-01-2016 | 07-06-2016 | 09-08-2016 |
| 83 | D.B. | 07-29-2016 (O-E) | 08-01-2016 | 03-01-2017 | 04-20-2016 | 11-30-2016 |
| 84 | J.M. | 07-30-2016 (O-E) | 08-01-2016 | 10-01-2016 | 08-10-2016 | 10-22-2016 |
| 85 | W.C. | 07-29-2016 (O-E) | 08-01-2016 | 11-01-2016 | 08-03-2016 | 10-31-2016 |

**Medically Unnecessary Testing**

86.     In or about July 2015, defendant JASON GERNER met with Person #2 and Jesse Peters to discuss defendant GERNER and Person #2 sending all the urine samples for patients attending Liberation Way facilities in the Eastern District of Pennsylvania for treatment of drug and alcohol addictions to urine-testing laboratories in Florida associated with Peters, in return for which Peters agreed to kick back a percentage, that is, approximately 40%, of the money obtained from the Health Care Benefit Programs, to defendant GERNER and Person #2.

87.     In or about the Summer of 2015, defendant JASON GERNER solicited Ramesh Sarvaiya to be the doctor to sign urine testing medical orders for Liberation Way patients in return for a fee.

88.     On or about July 28, 2015, defendant JASON GERNER forwarded documents to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "standing order – additional tests protocol" with A-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients at the Bala Cynwyd, Pennsylvania, location.

89.     On or about July 30, 2015, Person #2, Jesse Peters, and Person #4 met to sign a contract, purportedly between "A. Solutions," a company in Florida associated with Peters, and Philly 180, a shell company established by Person #4 to be the repository for the kick back payments.   Defendant GERNER knew that Philly 180 would not actually perform the terms of the contract, particularly, "market [A. Solutions]'s services to potential clients."

90.     On or about July 30, 2015, Person #4 established a PNC bank account for

Philly 180 with a $100 deposit.

91.     On or about August 3, 2015, defendant JASON GERNER forwarded documents from A-Lab in Florida to Ramesh Sarvaiya, in order to get Sarvaiya's signature on documents requesting testing of urine samples for Liberation Way patients.

92.     On or about November 16, 2015, defendant JASON GERNER forwarded documents to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "screening protocol" document with C-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients.

93.     On or about January 13, 2016, defendant JASON GERNER forwarded documents to Ramesh Sarvaiya, in order to get Sarvaiya's signature on a "screening protocol" document with DB-Lab in Florida requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients.

94.     From in or about August 2015 through in or about October 2016, Ramesh Sarvaiya signed, and otherwise authorized, orders for urine tests for Liberation Way patients he never saw or treated, falsely certifying, and allowing to be falsely certified, that Sarvaiya had seen the patient and that the tests were medically necessary for his continued treatment of the patients.

95.     From in or about August 2015 through in or about October 2016, defendant JASON GERNER provided urine-testing forms pre-signed by Sarvaiya to his staff at Liberation Way treatment locations and instructed them to fill out these forms with patient information, for forwarding, along with urine samples, to Florida laboratories for testing.

96-131.  From in or about August 2015, through in or about October 2016, defendant JASON GERNER, and others known and unknown to the United States Attorney, caused the below fraudulent insurance claims, among many others, to be submitted on or about the dates noted, to the below-noted Health Care Benefits Programs, which paid for urine testing services for the patients, identified by initials, where Ramesh Sarvaiya never saw or evaluated the patient in any way, and which were, thus, not medically necessary:

| OVERT ACT # | ON OR ABOUT DATE SUBMITTED | PATIENT INITIALS | APPROX. AMOUNT BILLLED | APPROX. AMOUNT PAID | HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|---|
| 96 | 08-07-2015 | J.L. | $1,800 | $98 | IBC |
| 97 | 08-18-2015 | K.S.B. | $1,641 | $562 | CIGNA |
| 98 | 09-03-2015 | M.C. | $1,800 | $1,530 | IBC |
| 99 | 09-07-2015 | K.M | $4,409 | $500 | FEHBP |
| 100 | 10-01-2015 | S.M. | $1,800 | $1,071 | IBC |
| 101 | 10-15-2015 | M.W. | $2,833 | $173 | FEHBP |
| 102 | 11-06-2015 | A.G. | $1,800 | $1,530 | IBC |
| 103 | 12-18-2015 | K.C. | $2,107 | $1,171 | CIGNA |
| 104 | 12-23-2015 | D.B. | $1,800 | $98 | IBC |
| 105 | 12-31-2015 | L.Z. | $2,107 | $135 | FEHBP |
| 106 | 01-06-2016 | S.H. | $3,228 | $2,582 | IBC |
| 107 | 01-25-2016 | C.F. | $3,228 | $2,744 | CIGNA |
| 108 | 02-02-2016 | J.J. | $3,228 | $2,744 | IBC |
| 109 | 02-12-2016 | H.R. | $3,228 | $2,744 | CIGNA |
| 110 | 02-12-2016 | T.W. | $1,800 | $1,530 | HIGHMARK |
| 111 | 02-24-2016 | J.B | $3,228 | $135 | FEHBP |
| 112 | 03-23-2016 | R.S. | $3,228 | $2,744 | IBC |
| 113 | 04-07-2016 | M.W. | $3,228 | $2,567 | IBC |
| 114 | 04-11-2106 | A.W. | $3,228 | $2,744 | IBC |
| 115 | 05-03-2016 | O.M. | $3,228 | $2,744 | IBC |
| 116 | 05-06-2016 | C.C. | $3,228 | $2,421 | CIGNA |
| 117 | 05-19-2016 | K.S. | $3,228 | $322 | HIGHMARK |
| 118 | 06-09-2016 | J.D. | $3,228 | $2,744 | IBC |
| 119 | 06-10-2016 | R.B. | $2,490 | $1,618 | FEHBP |
| 120 | 06-27-2016 | K.K. | $2,490 | $2,116 | HIGHMARK |
| 121 | 07-05-2016 | J.R. | $3,228 | $2,582 | IBC |

| 122 | 07-12-2016 | T.D. | $2,490 | $1,328 | CIGNA |
| 123 | 08-18-2016 | A.Y. | $2,490 | $2,116 | CIGNA |
| 124 | 08-25-2016 | A.B. | $2,490 | $2,116 | IBC |
| 125 | 08-31-2016 | J.Z. | $3,228 | $2,744 | HIGHMARK |
| 126 | 09-14-2016 | I.B. | $5,028 | $186 | FEHBP |
| 127 | 09-12-2016 | J.M. | $2,490 | $2,116 | IBC |
| 128 | 09-30-2016 | T.R. | $2,490 | $249 | HIGHMARK |
| 129 | 10-10-2016 | R.W. | $2,490 | $2,241 | IBC |
| 130 | 10-11-2016 | N.G. | $2,490 | $1,129 | CIGNA |
| 131 | 10-31-2016 | S.A. | $2,490 | $249 | HIGHMARK |

132-137.     On or about the following dates, defendant JASON GERNER

directed Person #6 to sign and send a check for payment to Ramesh Sarvaiya, in the amount

noted below, as payment for Sarvaiya signing, and otherwise agreeing to authorize, urine testing

orders for Liberation Way patients:

| OVERT ACT # | DATE OF CHECK | CHECK AMOUNT |
| --- | --- | --- |
| 132 | 03-10-2016 | $1000.00 |
| 133 | 03-31-2016 | $500.00 |
| 134 | 05-18-2016 | $500.00 |
| 135 | 07-20-2016 | $1,000.00 |
| 136 | 10-16-2016 | $1,000.00 |
| 137 | 12-31-2016 | $2,000.00 |

### Kickbacks for Medically Unnecessary Urine Testing

138-148.  On or about the following dates, Jesse Peters sent, and caused to be

sent, a check to Person #4 made payable to Philly 180, which sum of money was actually

intended for defendant JASON GERNER and Person #2, and represented a percentage of the

inflated fraudulent billing proceeds from the Health Care Benefit Programs obtained as a result

of the scheme to test urine samples of Liberation Way patients for medically unnecessary and

extensive qualitative testing:

| OVERT ACT # | DATE ON CHECK | CHECK PAYEE | WRITTEN ON LAB ACCOUNT | CHECK AMOUNT | NOTATION ON CHECK |
|---|---|---|---|---|---|
| 138 | 10-15-2015 | Philly 180 | C-Lab | $3,305.04 | September 2015 |
| 139 | 11-16-2015 | Philly 180 | C-Lab | $20,330.74 | September 2015 |
| 140 | 12-17-2015 | Philly 180 | C-Lab | $52,072.68 | Commissions |
| 141 | 01-20-2016 | Philly 180 | C-Lab | $74,026.54 | Commissions |
| 142 | 02-23-2016 | Philly 180 | C-Lab | $61,763.01 | Commissions |
| 143 | 03-22-2016 | Philly 180 | C-Lab | $144,470.16 | |
| 144 | 04-25-2016 | Philly 180 | C-Lab | $173,523.15 | Commissions |
| 145 | 05-27-2016 | Philly 180 | C-Lab | $81,538.32 | |
| 146 | 06-28-2016 | Philly 180 | C-Lab | $71,281.54 | |
| 147 | 07-21-2016 | Philly 180 | C-Lab | $41,138.83 | |
| 148 | 08-22-2016 | Philly 180 | C-Lab | $83,368.91 | July |

149-170.    On or about the following dates, Person #4 conducted a financial

transaction, by writing checks intended for defendant JASON GERNER and Person #2, which

were defendant GERNER's and Person #2's split of kickback payments from Peters, that is, a

percentage of the inflated fraudulent billing proceeds from the Health Care Benefit Programs

obtained as a result of the scheme to test urine samples of Liberation Way patients for medically

unnecessary and extensive qualitative testing, the transactions being designed, in whole and in

part, to conceal and disguise the nature, source, location, ownership, and control of the proceeds

of specified unlawful activity:

| OVERT ACT # | DATE ON CHECK | WRITTEN ON ACCOUNT | CHECK PAYEE | CHECK AMOUNT | NOTATION ON CHECK |
|---|---|---|---|---|---|
| 149 | 12-03-2015 | Philly 180 | Hope for Families | $5,000.00 | |
| 150 | 12-07-2015 | Philly 180 | Person #2 | $15,000.00 | |
| 151 | 12-23-2105 | Philly 180 | Hope for Families | $25,500.00 | |
| 152 | 12-23-2015 | Philly 180 | Person #2 | $25,500.00 | |
| 153 | 01-22-2016 | Philly 180 | Jason Gerner | $36,500.00 | Dec 15 |

| 154 | 01-22-2016 | Philly 180 | Person #2 | $36,500.00 | Dec 15 |
| 155 | 02-29-2016 | Philly 180 | K. C. (associated with Jason Gerner) | $25,000.00 | |
| 156 | 02-29-2016 | Philly 180 | Person #2 | $35,000.00 | |
| 157 | 03-28-2016 | Philly 180 | Jason Gerner | $69,200.00 | |
| 158 | 03-28-2016 | Philly 180 | Person #2 | $71,800.00 | |
| 159 | 04-28-2016 | Philly 180 | Jason Gerner | $85,000.00 | Gerner Enterprises |
| 160 | 04-28-2016 | Philly 180 | Person #2 | $85,000.00 | |
| 161 | 06-01-2016 | Philly 180 | Jason Gerner | $40,269.00 | |
| 162 | 06-01-2016 | Philly 180 | Renata Holdings LLC | $40,269.00 | |
| 163 | 06-08-2016 | Philly 180 | Gerner Enterprises | $40,269.00 | |
| 164 | 06-08-2016 | Philly 180 | Person #2 | $40,269.00 | |
| 165 | 07-02-2016 | Philly 180 | Jason Gerner | $33,939.52 | |
| 166 | 07-02-2016 | Philly 180 | Person #2 | $33,939.52 | |
| 167 | 07-28-2016 | Philly 180 | Jason Gerner | $20,069.25 | |
| 168 | 07-28-2016 | Philly 180 | Person #2 | $20,069.25 | |
| 169 | 08-29-2016 | Philly 180 | Gerner Enterprises | $40,184.00 | |
| 170 | 08-29-2016 | Philly 180 | Renata Holdings LLC | $40,184.00 | |

171-175.     On or about the following dates on the below-referenced checks,

Jesse Peters sent, and caused to be sent, checks to defendant JASON GERNER and Person #2,

made payable to them individually and to LLCs associated with defendant GERNER and Person

#2, after defendant GERNER, Person #2, Person #3, and Person #4 decided to no longer use

Philly 180 as a vehicle through which to funnel the kickback payments, in an amount noted

below which represented a portion of the inflated fraudulent billing proceeds from the scheme to

test urine samples of Liberation Way patients for medically unnecessary and extensive

qualitative testing:

| OVERT ACT # | DATE ON CHECK | CHECK PAYEE | WRITTEN ON LAB ACCOUNT | CHECK AMOUNT | NOTATION ON CHECK |
| --- | --- | --- | --- | --- | --- |
| 171 | 09-06-2016 | Person #2 | DB-Lab | $25,000.00 | |

24

| 172 | 09-07-2016 | Defendant JASON GERNER | DB-Lab | $51,633.33 | consulting |
|-----|------------|------------------------|--------|------------|------------|
| 173 | 09-20-2016 | H—W----s LLC | C-Lab | $90,340.75 | |
| 174 | 09-20-2016 | Alban LLC | C-Lab | $90,340.75 | |
| 175 | 10-28-2016 | Alban LLC | A. Solutions | $128,462.84 | |

### Over-Billing for Medical Care Not Provided

176.     In or about July 2015, defendant JASON GERNER, Person #2, and Person #3 hired Domenick Braccia to be the "medical director" in charge of Liberation Way facilities.

177.     From in or about July 2015 through in or about December 2017, Domenick Braccia purported to be the "medical director" and overseeing doctor for all Liberation Way patients at the Yardley, Pennsylvania location, though, as defendant JASON GERNER knew, Braccia spent only a few hours a week at that location in the first few months, and, once the Fort Washington Location opened in August of 2016, Braccia no longer went to the Yardley location.

178.     From in or about June 2016 through in or about December 2017, Domenick Braccia purported to be the "medical director" and overseeing doctor for all Liberation Way patients at the Bala Cynwyd, Pennsylvania location, though as defendant JASON GERNER knew Braccia never went to the Bala Cynwyd location.   Nonetheless, defendant JASON GERNER and Person #3, on behalf of Liberation Way, fraudulently billed the Health Care Benefit Programs for medical care purportedly provided by, and for medical tests ordered by, Braccia for patients at the Bala Cynwyd location.

179.     On or about June 30, 2016, at the request of defendant JASON GERNER, Domenick Braccia signed a "Provider Acknowledgement and Consent for Predetermined

25

Custom Profile" with C-Lab, on behalf of Liberation Way, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients, falsely averring that such tests for all patients were medically necessary.

180.    In or about Fall 2016, at the request of defendant JASON GERNER, Domenick Braccia signed blank C-Lab "Physician Diagnostics Order Laboratory Testing" forms, on behalf of Liberation Way, filling in advance the diagnostic code, and defendant GERNER provided the pre-signed blank forms for other non-doctor personnel at Liberation Way to use with patients that Braccia did not see.

181.    On or about November 14, 2016, at the request of defendant JASON GERNER, Domenick Braccia signed a "Urine Drug Testing Physician Standing Order" with O-Lab, on behalf of Liberation Way, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients at the Yardley location, falsely averring that such tests for all patients were medically necessary.

182.    On or about November 25, 2016, at the request of defendant JASON GERNER, Domenick Braccia signed blank O-Lab "Allergy Testing Physician Diagnostic Order" forms, on behalf of Liberation Way, filling in advance the diagnostic code, and defendant GERNER provided the pre-signed blank forms for other non-doctor personnel at Liberation Way to use with patients that Braccia did not see in order to conduct "allergy testing" on patients seeking treatment for addiction.

183.    In or about December of 2016, at the request of defendant JASON GERNER, Domenick Braccia signed a blank O-Lab "Urine Drug Testing Physician Diagnostics

Order" form, on behalf of Liberation Way, filling in advance the diagnostic code, and defendant GERNER provided the pre-signed blank form for other non-doctor personnel at Liberation Way to use with patients that Braccia did not see.

184.    On or about December 5, 2016, at the request of defendant JASON GERNER, Domenick Braccia signed a "Urine Drug Testing Physician Standing Order" with O-Lab, on behalf of Liberation Way, requesting extensive qualitative testing of all urine samples submitted for Liberation Way patients at the Bala location, falsely averring that such tests for all patients were medically necessary.

185.    From in or about June 2016 through in or about December 2017, defendant JASON GERNER provided urine-testing forms pre-signed by Domenick Braccia to his staff at Liberation Way treatment locations and instructed them to fill out these forms with patient information, for forwarding, along with urine samples, to Florida laboratories for testing.

186.    From in or about November 2016 through in or about December 2017, Domenick Braccia signed, and otherwise authorized, orders for urine tests for Liberation Way patients he never saw or treated, falsely certifying, and allowing to be falsely certified, that Braccia had seen the patient and that the tests were medically necessary for his continued treatment of the patients.

187-213.    From in or about June 2016 through in or about November 2017, defendant JASON GERNER, and, at his direction, others known to the United States Attorney, caused the below fraudulent insurance claims for purported medical care, among many others, to be submitted on or about the dates noted, to the below-noted Health Care Benefits Programs,

27

which paid for medical care purportedly provided by Domenick Braccia at the Liberation Way

Bala Cynwyd location, for the patients identified by initials, where Braccia never saw or

evaluated the patients in any way, and which were, thus, not medically necessary:

| OVERT ACT # | ON OR ABOUT DATE SUBMITTED | PATIENT INITIALS | APPROX. AMOUNT BILLED | APPROX. AMOUNT PAID | HEALTH CARE BENEFIT PROGRAM |
|---|---|---|---|---|---|
| 187 | 06-20-2016 | K.K. | $1,110 | $555 | IBC |
| 188 | 07-20-2016 | S.G. | $1,110 | $550 | IBC |
| 189 | 08-20-2016 | M.G. | $1,110 | $555 | IBC |
| 190 | 11-11-2016 | J.C. | $3,100 | $1,798 | IBC |
| 191 | 11-17-2016 | J.H. | $3,100 | $1,550 | IBC |
| 192 | 12-06-2016 | G.P. | $3,100 | $2,015 | FEHBP |
| 193 | 12-08-2016 | K.G. | $3,100 | $1,798 | IBC |
| 194 | 01-03-2017 | J.M. | $1,110 | $834 | IBC |
| 195 | 01-24-2017 | G.P. | $1,110 | $721 | FEHBP |
| 196 | 02-20-2017 | N.F. | $3,100 | $3,100 | IBC |
| 197 | 03-13-2017 | R.S. | $3,100 | $575 | IBC |
| 198 | 04-17-2017 | M.R. | $1,110 | $1,043 | IBC |
| 199 | 04-20-2017 | S.N. | $1,110 | $1,043 | IBC |
| 200 | 05-17-2017 | J.B. | $2,970 | $1,485 | IBC |
| 201 | 05-19-2017 | P.B. | $2,970 | 1,782 | IBC |
| 202 | 06-15-2017 | S.N. | $3,100 | $2,331 | IBC |
| 203 | 06-26-2017 | A.B. | $3,100 | $3,100 | IBC |
| 204 | 07-03-2017 | B.C. | $3,100 | $2,015 | FEHBP |
| 205 | 07-12-2017 | E.B. | $3,100 | $2,015 | IBC |
| 206 | 08-16-2017 | B.M. | $3,100 | $1,736 | IBC |
| 207 | 08-29-2017 | A.S. | $3,100 | $2,015 | IBC |
| 208 | 09-01-2017 | C.B. | $3,100 | $1,705 | IBC |
| 209 | 09-08-2017 | S.D. | $1,110 | $610 | IBC |
| 210 | 10-12-2017 | S.N. | $1,400 | $1,400 | IBC |
| 211 | 10-24-2017 | A.S. | $3,100 | $1,550 | IBC |
| 212 | 11-13-2017 | M.W. | $3,100 | $2,015 | FEHBP |
| 213 | 11-22-2017 | B.R. | $3,100 | $1,395 | IBC |

214–243.     From in or about November 2016 through in or about December

2017, defendant JASON GERNER, and at his direction, others known to the United States

Attorney, caused the below fraudulent insurance claims for laboratory tests, among many others, to be submitted to IBC on or about the dates noted, from the laboratories noted, which caused IBC to pay for urine testing services for the patients identified by initials, where Domenick Braccia never saw or evaluated the patient in any way, and which were, thus, not medically necessary:

| OVERT ACT # | ON OR ABOUT DATE SUBMITTED | PATIENT INITIALS | APPROX. AMOUNT BILLED | APPROX. AMOUNT PAID | LABORATORY WHO SUBMITTED CLAIM TO IBC |
|---|---|---|---|---|---|
| 214 | 11-01-2016 | B.T. | $1,844 | $1,568 | C-Lab |
| 215 | 11-08-2016 | A.B. | $1,844 | $1,568 | C-Lab |
| 216 | 12-01-2016 | A.C. | $1,844 | $184 | O-Lab |
| 217 | 12-01-2016 | E.R. | $1,844 | $955 | O-Lab |
| 218 | 12-15-2016 | B.B. | $1,800 | $37 | O-Lab |
| 219 | 01-03-2017 | K.W. | $1,844 | $955 | O-Lab |
| 220 | 01-17-2017 | G.O. | $1,800 | $39 | O-Lab |
| 221 | 02-15-2017 | S.B. | $1,800 | $79 | O-Lab |
| 222 | 02-16-2017 | A.C. | $1,994 | $144 | O-Lab |
| 223 | 03-02-2017 | D.G. | $1,994 | $1,994 | O-Lab |
| 224 | 03-03-2107 | E.R. | $1,994 | $1,994 | O-Lab |
| 225 | 04-04-2017 | S.B. | $1,994 | $96 | O-Lab |
| 226 | 04-12-2017 | S.F. | $1,404 | $511 | AD-Lab |
| 227 | 04-12-2017 | N.C. | $1,404 | $112 | AD-Lab |
| 228 | 05-05-2017 | E.R. | $1,404 | $1,404 | AD-Lab |
| 229 | 05-09-2017 | S.N. | $1,806 | $1,715 | AD-Lab |
| 230 | 06-05-2017 | S.D. | $1,806 | $160 | AD-Lab |
| 231 | 06-08-2017 | K.W. | $1,806 | $1,405 | AD-Lab |
| 232 | 07-13-2017 | K.K. | $2,468 | $204 | AD-Lab |
| 233 | 07-14-2017 | L.J. | $1,806 | $233 | AD-Lab |
| 234 | 08-03-2017 | S.M. | $1,806 | $112 | AD-Lab |
| 235 | 08-17-2017 | S.N. | $1,806 | $1,405 | AD-Lab |
| 236 | 09-01-2017 | K.W. | $1,806 | $1,405 | AD-Lab |
| 237 | 09-04-2017 | S.D. | $1,806 | $160 | AD-Lab |
| 238 | 10-12-2017 | S.N. | $1,806 | $1,715 | AD-Lab |
| 239 | 10-18-2017 | D.B. | $1,806 | $160 | AD-Lab |
| 240 | 11-03-2017 | S.M. | $1,806 | $160 | AD-Lab |
| 241 | 11-15-2017 | D.B. | $1,806 | $160 | AD-Lab |

| 242 | 12-01-2017 | B.B. | $1,806 | $80 | AD-Lab |
| 243 | 12-07-2017 | A.B. | $1,806 | $160 | AD-Lab |

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### (Conspiracy to Commit Money Laundering)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

    1.  Paragraphs 12, 19 to 25, and 27 of the Manner and Means and Overt Acts 86 to 175 of Count One are incorporated here.

    2.  From in or about July 2015 to in or about October 2016, in the Eastern District of Pennsylvania and elsewhere, defendant

### JASON GERNER

conspired and agreed with others known to the United States Attorney, to knowingly conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is, health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, source, location, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

    In violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE #1

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

        1.     As a result of the violation of Title 18, United States Code, Section 1349 set forth in this information, defendant

### JASON GERNER

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

        2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court; or

        d.     has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

        All pursuant to Title 18, United States Code, Section 982(a)(7).

## NOTICE OF FORFEITURE #2

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT**:

          1.     As a result of the violation of Title 18, United States Code, Section 1956, set forth in this information, defendant

### JASON GERNER

shall forfeit to the United States of America any and all property involved in such offenses, and any property traceable to such property, including, but not limited to, a money judgment for the amount of property involved in the offense.

          2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

          (a)     cannot be located upon the exercise of due diligence;

          (b)     has been transferred or sold to, or deposited with, a third party;

          (c)     has been placed beyond the jurisdiction of the court;

          (d)     has been substantially diminished in value; or

          (e)     has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.


*Denise Wolf for*

**WILLIAM M. McSWAIN**
**United States Attorney**